MORGAN v. UNION PAC. RY. CO.

(*Circuit Court, S. D. New York.* 1882.)

REMEDIES—LAW AND EQUITY—LEGAL RIGHTS PROTECTED.

Where the plaintiff, who held income bonds of the Union Pacific Railway Company, eastern division, the coupons of which were payable out of "net earnings" on the first of March and September in each year, brought an equity suit in March, 1880, claiming an account of net earnings by reason of a default on March 1, 1880, and thereafter brought suit at law to recover coupons on other bonds of the same issue held by him, but not included in the equity suits, for defaults arising September 1, 1880, March 1 and September 1, 1881, and March 1, 1882, *held*, that plaintiff was entitled to an account in the equity suit, not merely for net earnings prior to the commencement of such equity suit to pay the coupons then due, but also for all coupons due and net earnings

received after the commencement of the suit until the accounts were stated, and afterwards on the foot of the decree in the equity suit, and that the lawsuits could all be stayed without prejudice to plaintiff, as all his rights hereafter to recover could be protected in the equity suit.

Motion to Open Default. Also to remand to state court.

At the conclusion of the argument of counsel on above motion before Hon. SAMUEL BLATCHFORD, in this cause, the court made the following remarks:

THE COURT. I think it is quite clear that under this mortgage these coupons are to be paid out of the net earnings, although the mortgage states that each half year's coupons are to be paid out of the net earnings of that half year; yet the subsequent clause makes them what is called cumulative. If they are not enough to pay the first six months' coupons, why, then, they are not to be paid at all, but the subsequent net earnings are to be added until they are enough to pay all the first six months' coupons, and so on. And so they are to be cumulative; and then they are to be applied to the coupons in their order, so that no subsequent prosperous six months can give to the coupons of that six months an advantage over prior coupons. Under a bill, and according to the general course, where the thing is continued, the account, if it is to be taken under a bill in equity, does not stop with the commencement of the suit. So I have not any doubt whatever that under this mortgage, and under this equity suit, not only could the court go on, but would be bound to go on, and pay the bond which had matured prior to the commencement of this action; but, if there is not money enough to do that, I have no doubt but what the court may go on and administer this thing strictly according to equity and practice.

So much for the equity of the suit. Now, the idea of Mr. Henry Morgan, as it seems to me, upon which these lawsuits are based, is that the mortgagor—that is, the Union Pacific Railroad Company— shall not resume payments of dividends on this stock until it has paid any of these coupons that are out. That is a conclusive presumption, —uncontroverted by the Union Pacific Railroad Company, into which this Kansas corporation was merged,—that it had net earnings, etc. Well, that proposition does not follow at all, because, as I have heretofore held, when this question first came up about two years ago, that the net earnings are the net earnings of that railroad, and that it is absolutely necessary, as long as this mortgage is alive and the bonds outstanding, to keep up such a state of accounts so that you can ascertain what the net earnings of that railroad have been.

Now, it may very well be that the dividend declared on the consolidated stock of the consolidated company, even though that dividend may have gone in equal proportions to the holders of the stock, it may be, nevertheless, that it was paid out of the net earnings—out of the net earnings of all the other parts of the line. It seems to me there is no question but that these net earnings are covered by that equity suit, because all the bonds covered by that mortgage—the $1,000 bonds, the $250, and some $100—are owned by the plaintiff in that equity suit; yet, nevertheless, as they were all bonds issued under that mortgage, it seems to me that if hereafter there is a decree for the payment of that suit and any fund paid into court, that any holder of any income bond of any amount, or of any number, under that mortgage—not only the holders of those $250 bonds, but the holders of the $1,000 bonds—can come into court and get their money. That is the way it stands. That being so, it seems as if this equity suit may cover the whole amount. I do not see but that the equity suit covers the ground it does in respect to bonds, but it also covers, in respect to questions, all the questions that can be raised in these two law suits. It is very true, perhaps, that when the suit was originally brought no dividend had been paid, and I understand there was an amendment to the bill which alleges the fact of the payment.

*Mr. Dillon.* That is true.

*The Court.* That raises the question; in other words, it seems to me impossible to determine the questions which are properly and legitimately raised on the record in an equity suit without determining every question that is raised or can be raised on the record in the lawsuits. It strikes me so. Of course, if either party is to be deprived of any question or any advantage the court will see that they are not prejudiced in any way. But at all events the staying of the suits for the present does not prevent the court from allowing them to be resumed at any time when it does not appear that any prejudice to either party will result. The matters which it would be necessary to put in evidence to prove the case upon either side in these two lawsuits would seem to be wholly in the proof in the equity suit. It is-true, of course, that as time passes on the road keeps running—there are new receipts and new disbursements; that is, we are continually in accounts. These are considerations which have occurred to me as very salient. Now, in view of these considerations, what is best to do with that default question? Of course, I must take these pleadings from the state court as they came. The

question is whether, according to the practice of this court, I ought to set such a bad precedent as to take such an answer as this and put it on file because it came here from the state court in a common-pleas suit. If the proceedings in this suit are to be stayed, why then, perhaps, it does not become a practice question.

*Mr. Dillon.* We would either have to let it stand in that way, or we would have to file a bill and then state it. That is another argument. Whatever your honor thinks the ordinary procedure we will comply with.

*The Court.* My impression is that the better way would be, in order not to create any inconvenient practice and precedent, to stay the proceedings in both these lawsuits. Of course, in the one we have not taken what would be done next in such a suit as that, whether we should try it by a jury, or whether we should knock the answer out and say we cannot get along with such a thing as that. But what me would do it is not necessary now to decide. In the other suit the better way would be to enter an order staying it, without prejudice to the right of either party, at any time that proceedings shall be in order to resume, and to apply to the court if it should ever become necessary to do so. Either to do that, or to file a bill in the nature of a cross-bill. It seems to me in that way we will preserve more rights, and it will leave the cases substantially where they are now, with the privilege of taking them up at any time; and, if the plaintiff would prefer that, in the orders in respect to these lawsuits the court shall insert a provision to the effect (which the court would compel the defendants to accede to) that the bonds involved in these two lawsuits shall be considered as embraced here. I think that would bring it up.

*Mr. Dillon.* We make that concession, if your honor please.

*The Court.* Then the plaintiff would not be in the position of saying that he was not free of it. The court will make that a condition of the stay. It is just substantially what I did the other day in a suit here.

*Mr. Forster.* I would like to make this suggestion: That the plaintiff should also be required to stipulate that in any accounting to be taken in the equity suits they should be required to account for each six months, up to the time when the accounting was directed, at all events, or else for the period covered by these suits.

*The Court.* That is what I mean. It is only another way of stating what I said. In what I said I meant to be understood that it is not necessary to file a supplemental bill. This is a case where it is

the same mortgage, and it is a continual operation under the same circumstances. It is simply because to-morrow is not to-day. That is all there is of it.

*Mr. Holmes.* We are perfectly agreed to that, your honor.

*The Court.* You want something on record to show that this court retains the suits in this court. Then Mr. Forster had better draw an order of such a kind as he thinks proper, with reference to these suggestions of mine in regard to the stay of proceedings. Those are all the orders that are necessary, relieving the default; and then, making provision that the stay shall be without prejudice to defendant's right to move to answer in the lawsuits, or to file any bill for a stay. That disposes, I think, of everything.